UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAM NGUYEN, et al., <br><br>    Plaintiffs, <br><br> v. <br><br> FORD MOTOR COMPANY, et al., <br><br>    Defendants. | Case No. 19-cv-05541-EMC <br><br> **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** <br><br> Docket No. 15 |

    Plaintiffs Nam Nguyen and Tan Nguyen have filed suit against two defendants: Ford Motor Company ("Ford") and Paso Robles Ford. Their claims are related to the purchase of a Ford car. The case was initiated in state court but Defendants removed the case to federal court on the basis of diversity jurisdiction. Defendants argued that the citizenship of Paso Robles Ford can be ignored because the Nguyens fraudulently joined it to the case. Currently pending before the Court is the Nguyens' motion to remand back to state court.[1] Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to remand.

### I.     FACTUAL & PROCEDURAL BACKGROUND

    In their complaint, the Nguyens allege as follows. Ford designs, manufactures, markets, and sells cars. *See* Compl. ¶ 4. Paso Robles Ford sells cars and services and repairs cars. *See*

---

[1] The Nguyens did not move to remand until three months after Defendants removed the case to federal court. *See* Not. of Removal (filed in September 2019; Mot. (filed in December 2019). Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect *other* than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ." 28 U.S.C. § 1447(c) (emphasis added).

Compl. ¶ 5.

On April 21, 2013, the Nguyens purchased a 2013 Ford Escape from Paso Robles Ford.[2] *See* Compl. ¶ 8. "In connection with the purchase, Plaintiffs received an express written warranty, including a 3-year/36,000 mile express bumper to bumper warranty and a 5-year/60,000 mile powertrain warranty which, inter alia, covers the engine and transmission." Compl. ¶ 9. "During the warranty period, [the Nguyens' car] contained or developed [a number of different] defects . . . ." Compl. ¶ 10. Ford has not been able "to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities." Compl. ¶ 13. Ford has not replaced the car nor made restitution to the Nguyens. *See* Compl. ¶ 13.

Based on, *inter alia*, the above allegations, the Nguyens have asserted the following causes of action:

(1) Violation of California Civil Code § 1793.2(d)(2) (providing that, "[i]f the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer").

(2) Violation of California Civil Code § 1793.2(b) (providing that, "[w]here those service and repair facilities are maintained in this state and service or repair of the goods is necessary because they do not conform with applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative in this state[;] . . . the goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days").

(3) Violation of California Civil Code § 1793.2(a)(3) (providing that "[e]very manufacturer of consumer goods sold in this state and for which the manufacturer has made an express warranty shall . . . [m]ake available to authorized service and repair

---

[2] Defendants dispute this fact. *See* Opp'n at 3 (asserting that the Nguyens purchased the vehicle from Frontier Ford).

2

facilities sufficient service literature and replacement parts to effect repairs during the express warranty period").

(4) Breach of express written warranty. *See* Cal. Civ. Code §§ 1791.2(a), 1794 (defining express warranty and providing that "[a]ny buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief").

(5) Breach of the implied warranty of merchantability. *See* Cal. Civ. Code §§ 1791.1, 1794 (defining implied warranty and providing the same as above).

(6) Fraud by omission (related to an engine defect).

(7) Negligent repair.

All of the causes of action are asserted against Ford only, except for the seventh which is asserted against Paso Robles Ford only. According to the Nguyens, Paso Robles Ford is liable for negligent repair because it "breached its duty to Plaintiffs to use ordinary care and skill by failing to properly store, prepare and repair the Subject Vehicle in accordance with industry standards." Compl. ¶ 54.

As noted above, Ford and Paso Robles Ford removed the case from state to federal court, asserting diversity jurisdiction. According to Defendants, the California citizenship of Paso Robles Ford should be disregarded because the Nguyens fraudulently joined the company to this action.

## II. DISCUSSION

A. Legal Standard

> A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction." Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant. In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined.

*GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018).

"A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'" *Id.* "There are two ways [for a defendant] to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* The second way is satisfied "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (internal quotation marks omitted). "But 'if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" *GranCare*, 889 F.3d at 548 (emphasis added). As a practical matter, this means that a "district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* at 550.

The Ninth Circuit has

> upheld rulings of fraudulent joinder where a defendant demonstrates that a plaintiff is barred by the statute of limitations from bringing claims against that defendant. *See Ritchey*, 139 F.3d at 1320; *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). We have also upheld such rulings where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant. *See McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (defendant's conduct was privileged under state law); *United Comput. Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (plaintiff's claims against alleged sham defendant were all predicated on a contract to which the defendant was not a party); *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426-27 (9th Cir. 1989) (same). We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal. *See Hunter*, 582 F.3d at 1046 (holding that an implied preemption affirmative defense was not a permissible ground for finding fraudulent joinder).

*Id.* at 548-49.

In the instant case, Defendants argue that Paso Robles Ford was fraudulently joined because the only claim asserted against it is one for negligent repair and that claim is barred by (1)

4

the statute of limitations and (2) the economic loss rule.[3]  In the alternative, Defendants argue that the Court should "drop Paso Robles as a party" pursuant to Federal Rule of Civil Procedure 21. Opp'n at 9.

B.  Statute of Limitations

As noted above, Defendants argue first that there is no valid claim against Paso Robles Ford because it is time barred.  As an initial matter, the Court notes that Defendants did not articulate this specific theory of fraudulent joinder in their notice of removal.  *See* Not. of Removal ¶¶ 30, 33 (asserting that the negligent repair claim is invalid based on the economic loss rule; also asserting that the negligent repair claim is vaguely alleged, with Plaintiffs failing to specify "how, if at all, Paso Robles Ford failed to properly store, prepare or repair the vehicle").  Accordingly, the Nguyens argue that the Court should not even entertain it.

The Nguyens' position has merit.  The Ninth Circuit has held that

> [a] defendant seeking to remove a case to federal court must do so within thirty days of being served with the complaint.  The Notice of Removal "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period." . . . [A] defendant may amend the Notice of Removal after the thirty day window has closed [only] to correct a "defective allegation of jurisdiction."  The rationale for permitting amendment to correct allegations of jurisdictional facts is that "in determining whether a removal petition is incurably defective, the court not only examines the specific allegations of the petition itself, but also must scrutinize the record of the state court proceedings" for omitted jurisdictional facts.

*ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1117 (9th Cir. 2000).  *See, e.g.*, *N. Ill. Gas Co. v. Airco Indus. Gases, Div. of Airco, Inc.*, 676 F.2d 270, 274 (7th Cir. 1982) ("Where the state court record reveals a jurisdictional fact, albeit imperfectly stated, which is essential to removal and which has been omitted from the four corners of the removal petition, an amendment of the petition is permissible to correct the defect.").

---

[3] In their notice of removal, Defendants also argued that the claim for negligent repair was too conclusorily pled.  *See* Not. of Removal ¶ 32 (asserting that "Plaintiffs do not allege how, if at all, Paso Robles Ford failed to properly store, prepare or repair the vehicle").  However, Defendants did not reassert this argument in opposition to the motion to remand, and therefore the Court does not entertain it.

5

Even if the Court were to consider the merits of Defendants' time bar argument, Defendants would fare no better. Admittedly, as noted above, the Ninth Circuit has "upheld rulings of fraudulent joinder where a defendant demonstrates that a plaintiff is barred by the statute of limitations from bringing claims against that defendant." *Id.* at 548 (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998). But notably, in *Ritchey*, the Ninth Circuit essentially found it obvious – or rather, as it stated, "perfectly clear" – that there was a time bar based on evidence of which it could take judicial notice. *See Ritchey*, 139 F.3d at 1319-20 ("In this case, when the strobe of judicial notice is placed upon Ritchey's pleading, it appears perfectly clear that the statute of limitations is a defense . . . .").

In the instant case, Defendants are not asking the Court to find a time bar based on judicially noticeable evidence. Rather, Defendants have submitted evidence outside the four corners of the complaint – more specifically, evidence indicating that repairs were made by Paso Robles Ford in November 2013, June 2014, November 2015, and April 2019. *See* Harlow Decl., Ex. 4 (document titled "Standard Claims List"). Furthermore, such evidence is not "extraordinarily strong evidence" of a time bar such that it is clear or obvious that the negligent repair claim is invalid. *GranCare*, 889 F.3d at 548. Most notably, one repair – from April 2019 – did take place within the statute of limitations. The Nguyens filed their lawsuit in July 2019. Even assuming that there is a two-year statute of limitations for the Nguyens' negligent repair claim,[4] the April 2019 repair (assuming it was negligently performed) falls within the statute of limitations – a point that Defendants admit in their opposition brief. *See* Opp'n at 5.

Finally, as the Nguyens point out in their reply brief, the negligent repair claims may be timely even if based on the earlier repairs (from 2013 to 2015) if the Nguyens did not discover, nor could they have reasonably discovered, that the repairs were negligently performed until later. *See Sabicer v. Ford Motor Co.*, 362 F. Supp. 3d 837, 842 (C.D. Cal. 2019) (noting that, "[u]nder

---

[4] Defendants argue for a two-year statute of limitations based on California Code of Civil Procedure § 339(1), which covers "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing." Cal. Code Civ. Proc. § 339(1). The Nguyens argue that § 338(c)(1) applies instead of § 339(1). Section 338(c)(1) covers "[a]n action for taking, detaining, or injuring goods or chattels, including an action for the specific recovery of personal property." *Id.* § 338(c)(1).

6

the delayed discovery rule, courts postpone commencement of the limitation period until the plaintiff discovers or should have discovered all facts essential to his cause of action[;] Defendants have failed to prove that there is no possibility that Plaintiffs could invoke the delayed discovery rule to assert a negligent repair claim against Santa Margarita Ford"). Plaintiffs specifically note the delayed discovery rule and argue that "[t]he fact that Plaintiffs presented the Vehicle to Paso Robles Ford for repairs does not show *when* Plaintiffs discovered that Paso Robles Ford had failed to repair the Vehicle in accordance with industry standards." Reply at 8 (emphasis in original). It cannot be said the Nguyens have no possible claim against Paso Robles Ford.

C. Economic Loss Doctrine

Defendants argue that, even if the statute of limitations is not a clear bar to the negligent repair claim asserted against Paso Robles Ford, there is an independent ground to find the claim obviously invalid – *i.e.*, based on the economic loss doctrine.

> "The economic loss rule provides that [w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic losses.'" The purpose of the economic loss rule is to prevent "the law of contract and the law of tort from dissolving into one another." The doctrine hinges on the difference between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and transactions involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by tort law. "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."

*Hammond Enters. v. ZPS Am. LLC*, No. C -12-03600(EDL), 2013 U.S. Dist. LEXIS 155135, at *15-16 (N.D. Cal. Oct. 29, 2013).

As a preliminary matter, it is not obvious that the Nguyens have failed to state a claim for negligent repair because some

> courts have held that the economic loss rule does not apply to cases involving negligent performance of *services*. *See N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 777-81 (1997) (holding the economic loss rule does not apply in cases involving the negligent performance of services that results in foreseeable economic loss). In *J'Aire*, the California Supreme Court held that a plaintiff could recover in tort for loss of expected economic advantage – without

7

> accompanying personal injury or property damage – from a defendant's negligent performance of a contract if there was a "special relationship" between the parties. *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 805 (1979). Although the parties in *J'Aire* were not in contractual privity, other courts have extended *J'Aire* to cases where the parties were in contractual privity. *See, e.g.*, *N. Am. Chem.*, 59 Cal. App. 4th at 783; *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1448 (1995); *Pisano v. Am. Leasing*, 146 Cal. App. 3d 194, 197 (1983). To determine whether there is a "special relationship," courts consider: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *J'Aire,* 24 Cal. 3d at 804. The crucial factor is whether the economic harm to the plaintiff from the defendant's negligent conduct is foreseeable. *J'Aire*, 24 Cal. 3d at 805-06; *N. Am. Chem.*, 59 Cal. App. 4th at 784. In cases involving the negligent performance of services, economic harm is typically foreseeable. *See id.* at 784-85. Here, it is conceivable that there was a special relationship between Plaintiff and Capistrano Ford when Plaintiff brought in his Vehicle for repair.

*McKeown v. Ford Motor Co.*, No. CV 19-00281-CJC(PLAx), 2019 U.S. Dist. LEXIS 41870, at *8 (C.D. Cal. Mar. 13, 2019) (emphasis added).

Admittedly, *North American Chemical*, which held that the economic loss rule does not apply to claims for negligent performance of services, has been subject to some criticism. *See, e.g.*, *Gayou v. Ford Motor Co.*, No. CV 18-10407-DMG (JEMx), 2019 U.S. Dist. LEXIS 49599, at *7-8 (C.D. Cal. Mar. 25, 2019) (noting that "[t]he extent to which *North American Chemical* remains good law is not entirely clear to the Court" and that one federal court has "predicted that the California Supreme Court would hold that entering into an 'arm's-length' service contract does not create a 'special relationship' that gives rise to tort liability"); *Rejects Skate Magazine, Inc. v. Acutrack, Inc.*, No. C 06-2590 CW, 2006 U.S. Dist. LEXIS 63157, at *14 (N.D. Cal. Aug. 22, 2006) (declining to follow *North American Chemical* and "apply[ing] the economic loss rule here regardless of whether the parties' contract is defined as one for a product (i.e., duplicated DVDs) or services (duplication of DVDs)"). That being said, given the "lack of clarity in California law regarding the tort duties arising from service contracts," this Court (like the court in *Gayou*) cannot say "it would be impossible for Plaintiff to bring a tort claim for negligent repair based on the service contract." *Gayou*, 2019 U.S. Dist. LEXIS 49599, at *8.

Even if the Court were not persuaded by the above, the Nguyens have offered another reason why their claim for negligent repair is not obviously invalid. More specifically, although the economic loss rule bars a plaintiff from bring a tort claim for damage to a defective product, it does not bar a plaintiff from recovering in tort when the product defect causes damage to other property – *i.e.*, property other than the defective product itself. *See Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (2002). And, notably, in *Jimenez*, the California Supreme Court recognized that a component part of a larger product can be the defective product that can cause harm to other components of the larger product, thus avoiding the economic loss rule. In *Jimenez*, the California Supreme Court stated:

> To apply the economic loss rule, we must first determine what the product at issue is. Only then do we find out whether the injury is to the product itself (for which recovery is barred by the economic loss rule) or to property other than the defective product (for which plaintiffs may recover in tort). Defendant window manufacturers argue that here the 'product' is the entire house in which their windows were installed, and that the damage caused to other parts of the house by the allegedly defective windows is damage to the product itself within the economic loss rule, thus precluding application of strict liability. We disagree.
>
> California decisional law has long recognized that the economic loss rule does not necessarily bar recovery in tort for damage that a defective product (e.g., a window) causes to *other portions* of a larger product (e.g., a house) into which the former has been incorporated.

*Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (2002) (emphasis added). "Defendants' argument here that the house is the relevant product for purposes of applying the economic loss rule is inconsistent with these and other decisions recognizing that the duty of a product manufacturer to prevent property damage does not necessarily end when the product is incorporated into a larger product." *Id.* at 484.

> Applying this principle to the facts before us here, we conclude that the manufacturer of a defective window installed in a mass-produced home may be held strictly liable in tort for damage that the window's defect causes to other parts of the home in which it is installed. We have no occasion here to consider . . . whether there may be situations in which the economic loss rule would bar recovery for damages that a defective component part causes to other portions of the finished product of which it is a part. We hold only that, under California decisional law, the economic loss rule

9

> does not bar a homeowner's recovery in tort for damage that a
> defective window causes to other parts of the home in which it has
> been installed.

*Id.* (emphasis added).

Based on *Jimenez*, the Nguyens could argue that, *e.g.*, a defect in the car engine harmed other parts of the car. Although the Nguyens' complaint as pled does not clearly or expressly make a claim that a defective component part of their car hurt another component part, the Nguyens might amend their complaint to add such allegations. *See, e.g.*, Reply at 4 (asserting that there were engine defects which impacted other components of the car related or connected to the engine – *e.g.*, "the coolant control valve, engine shielding coolant system, [and] cylinder head gasket").[5] This was the point made by Judge Alsup in *Millican v. Ford Motor Co.*, No. C 19-05348 WHA, 2019 U.S. Dist. LEXIS 219304 (N.D. Cal. Dec. 20, 2019):

> Here, plaintiffs allege Penske Ford failed to "store, prepare, and
> repair the Subject Vehicle in accordance with industry standards."
> And they allege a litany of defective components, particularly an
> engine defect. Plaintiffs' claim for negligent repair against Penske
> Ford may be threadbare, but the question is not whether plaintiffs
> will prevail on the merits, or even withstand a Rule 12(b)(6) motion
> – the question is whether California law obviously forecloses
> plaintiffs' claim. So long as the "duty of a product manufacturer to
> prevent property damage does not necessarily end when the product
> is incorporated into a larger product," California's economic loss
> rule does not bar recovery if the alleged defect damages other
> components of the vehicle. Plaintiffs could so amend their
> complaint and this leaves a "possibility" of recovery from Penske
> Ford.

*Id.* at *4-5.[6]

---

[5] Defendants have suggested that the car defect that was the subject of the April 2019 repair could not have harmed other parts of the car because that car defect involved a problem with a car door. However, at the hearing, the Nguyens disputed that the only problem with the car in April 2019 was a problem with the door.

[6] It is also notable that at least one California court has held that it is a question of fact as to whether a component part is properly deemed the defective product, as opposed to the larger product of which it is a part. *See KB Home v. Superior Court*, 112 Cal. App. 4th 1076, 1087 (2003) (holding that determining what the product at issue is – *i.e.*, the component part or the larger product – for purposes of *Jimenez* is a matter that should be left to the trier of fact for resolution). Such a factual issue is another consideration that weighs against fraudulent joinder. *See GranCare*, 889 F.3d at 549 (noting that "[w]e have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal").

In addition, the Nguyens fairly note that it is not obvious that the economic loss rule would bar them from claiming that a defective component part to their car hurt the car itself (*i.e.*, as the larger product in which the component part was incorporated). Some courts have found such a theory viable. *See, e.g.*, *Nellett v. Ford Motor Co.*, No. 19-cv-04142-BLF, 2019 U.S. Dist. LEXIS 205495, at *9 (N.D. Cal. Nov. 25, 2019) (noting that plaintiff "alleges defects to various components and subcomponents of the Vehicle" – *e.g.*, "in the engine, cooling system, door actuator(s), under-hood vacuum pump, and electrical system, among others[;] [t]he economic loss rule does not bar recovery in tort for damage that these components and subcomponents cause to the Vehicle in which these components and subcomponents have been incorporated"); *McAdams v. Ford Motor Co.*, No. 18-CV-07485-LHK, 2019 U.S. Dist. LEXIS 95570, at *11-12 (N.D. Cal. June 5, 2019) (noting that, in *Sabicer*, 362 F. Supp. 3d at 841, the court held that "the economic loss rule 'would not bar recovery in tort for damage that these subcomponents cause to the engine as a whole or for damage that the engine caused to the Vehicle in which it has been incorporated'"); *Lopez v. Ford Motor Co.*, No. CV 19-1165-GW(FFMx), 2019 U.S. Dist. LEXIS 77995, at *9 (C.D. Cal. May 8, 2019) (also relying on *Sabicer*); *Stockinger v. Toyota Motor Sales USA, Inc.*, No. LACV 17-00035-VAP (KLSx), 2017 U.S. Dist. LEXIS 224071, at *62-63 (C.D. Cal. July 7, 2017) (noting that there was an alleged defect in the HVAC system in the motor vehicle at issue; while "the economic loss rule bars Plaintiffs from recovering for damages to the HVAC system itself under their negligent misrepresentation claims," "Plaintiffs can still recover to the extent Plaintiffs can show the odors and mold from the HVAC system damaged the rest of their vehicles"). *But see Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWg), 2017 U.S. Dist. LEXIS 67525, at *30-31 (C.D. Cal. Apr. 13, 2017) (in the context of a motion to dismiss, noting that "Plaintiffs allege only that the defective paint has cost Plaintiffs 'out of pocket losses associated with the paint defect, corrosion repairs and diminished value of [their] vehicle[s]'[;] [a]s the alleged economic damages in this case arise from harm to the product itself (i.e., the vehicle), the Court finds that the economic loss rule bars Plaintiffs' claims").[7]

---

[7] "Defendants [also] rely on *Ruiz v. BMW of North America, LLC*, No. 2:16-cv-01177 ODW AGRX, 2017 U.S. Dist. LEXIS 6983 (C.D. Cal. Jan. 18, 2017)[,] [but] the court in *Ruiz* 'did not

11

United States District Court
Northern District of California

1    Accordingly, the Court holds that Defendants have not established fraudulent joinder in the
2    instant case.

3    D.    Rule 21 Severance

4    Defendants argue still that, even if the Court does not find an obvious statute of limitations bar or obvious economic loss rule application, the Court could exercise jurisdiction over the instant case by severing Paso Robles Ford from the case under Rule 21, thus leaving only the claims against Ford.[8]

The Court acknowledges the Nguyens' contention that this Court would not have diversity jurisdiction even if the case was limited to just the claims against Ford. According to the Nguyens, there is no diversity jurisdiction because Ford has failed to show that (1) the amount in controversy likely exceeds $75,000 and that (2) the Nguyens are likely citizens of California. For purposes of this order, the Court assumes that there would be diversity jurisdiction with respect to the claims against Ford and thus addresses Defendants' Rule 21 argument.

Rule 21 provides as follows: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The Ninth Circuit has held that "Rule 21 grants a federal district or appellate court the discretionary power to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19." *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980); *see also Szymczyk v. Shiff (In re Incretin Mimetics Prods. Liab. Litig.)*, No. 15cv1283 AJB (MDD), 2015 U.S. Dist. LEXIS 192588, at *253 (S.D. Cal. July 28, 2015) (stating that, "[e]ven absent a finding of improper joinder, Rule 21 of the Federal Rules of Civil Procedure

---

discuss the effect of *Jimenez* and the caselaw allowing for recovery when a defective component damages a larger product in which the component is incorporated.'" *Madison v. Ford Motor Co.*, No. 2:19-cv-00853 WBS DB, 2019 U.S. Dist. LEXIS 131921, at *6 n.3 (E.D. Cal. Aug. 5, 2019).

[8] Defendants suggest that the Nguyens have waived any challenge to severance under Rule 21 because they did not file their motion to remand within 30 days after Defendants removed. *See* note 1, *supra*. But as the Nguyens assert, this argument has no merit because Defendants are invoking Rule 21 as a basis for the Court "'to perfect its diversity jurisdiction.'" Reply at 11 (emphasis omitted; quoting Defendants' notice of removal).

12

authorizes a court, in an exercise of its discretion, to sever non-diverse parties to establish federal jurisdiction"); 4 Moore's Fed. Prac. – Civ. § 21.05 (noting that "the courts agree that Rule 21 may apply even in the absence of misjoinder or nonjoinder").

Paso Robles Ford is arguably a dispensable party in the sense that the claim against it for negligent repair is different from the "lemon law" claims asserted against Ford. But even assuming Paso Robles Ford were dispensable, that would simply mean that this Court has discretion as to whether or not to sever. The totality of the circumstances in the instant case weighs against severance. The analysis of the district court in *Madison* is applicable here:

> Dismissal of dispensable nondiverse parties should be exercised sparingly after considering whether such dismissal will prejudice any of the parties in the litigation. The circumstances of this case strongly militate against dismissing defendant Elk Grove Ford as a dispensable party.
>
> First, severing Elk Grove Ford would defeat the purposes of permissive joinder. The primary purpose of joining multiple parties is to promote trial convenience and to protect against the inefficiency of multiple lawsuits. Here, the claims against both defendants are sufficiently intertwined, factually and legally, such that severance would be inconvenient and inefficient. For instance, to assert a claim under California Civil Code § 1793.2(d), plaintiffs had "to allow defendants a reasonable number of attempts to repair the [vehicle]." Because Elk Grove Ford performed those repairs, Elk Grove Ford "is obviously a proper party in an action dealing with alleged defects in that vehicle." It is also more convenient to address any claims related to the repairs in the same case dealing with claims related to the vehicle's warranties.
>
> Second, courts are especially reluctant to use Rule 21 "to contort the pleadings of a lawsuit merely to confer federal jurisdiction." Accepting this alternative argument would be "an improper end-run around [the court's] rejection of the fraudulent misjoinder doctrine." The court declines to use Rule 21 to merely confer federal jurisdiction where there is no other reason to conclude that Elk Grove Ford is a dispensable party.
>
> Accordingly, the court will not dismiss Elk Grove Ford from this lawsuit.

*Madison*, 2019 U.S. Dist. LEXIS 131921, at *8; *see also McAdams*, 2019 U.S. Dist. LEXIS 95570, at *16 (noting that "Plaintiffs' claims against Defendant Ford and Defendant Lithia arise from the same series of transactions or occurrences" – *e.g.*, "Plaintiffs' claim against Defendant Lithia involves the same Vehicle and some of the same defects in that Vehicle as Plaintiffs' claims

13

against Defendant Ford, such that judicial efficiency weighs against severing Defendant Lithia"). As in *Madison*, here, the Court will not exercise its discretion to sever Paso Robles Ford simply to establish diversity jurisdiction at the expense of judicial economy.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Nguyens' motion to remand. The Clerk of the Court is directed to administratively close the file in this case.

This order disposes of Docket No. 15.

**IT IS SO ORDERED**.

Dated: January 27, 2020

_____
EDWARD M. CHEN
United States District Judge